UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **DANIEL HEATH KIGHT**<br>DOC # 732234 | : | **DOCKET NO. 2:22-cv-0584**<br>**SECTION P** |
| **VERSUS** | : | **JUDGE JAMES D. CAIN, JR.** |
| **DARRYL VANNOY** | : | **MAGISTRATE JUDGE KAY** |

**REPORT AND RECOMMENDATION**

Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 by petitioner Daniel Heath Kight (Kight), who is proceeding *pro se* and *in forma pauperis* in this matter. Kight is an inmate in the custody of the Louisiana Department of Public Safety and Corrections and is currently incarcerated at the Louisiana State Penitentiary in Angola, Louisiana. The respondent opposes the petition [doc. 13]. The petition is now ripe for review.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636. For reasons stated below, **IT IS RECOMMENDED** that all claims be **DENIED** and **DISMISSED WITH PREJUDICE**.

**I.**
**BACKGROUND**

**A. Conviction**

The Third Circuit Court of Appeal provided the following facts in its opinion on the petitioner's original direct appeal:

> Scasino and Defendant, who were friends, had trailer homes next to each other in Vinton, Louisiana. On the morning of September 22, 2014, Scasino was found dead in his trailer home by Mark Kidder, a neighbor and friend. The Calcasieu Parish Coroner's report showed Scasino suffered multiple

> stab wounds and cuts to the head, neck, abdomen, back, buttocks, and both upper and lower extremities; his injuries led to the severing of both carotid arteries, a hole in his lung, and four holes in his liver. The Coroner also found Scasino's chest was cut open from the neck to his genitalia, and his testicles were removed and placed next to his body; these injuries were inflicted post-mortem.

*State v. Kight*, 18-974 (La. App. 3 Cir. 06/05/19), 275 So.3d 26, 28.

On December 10, 2014, a competency hearing was held and the petitioner was found competent to proceed to trial. Doc. 13, att. 3, p. 16. The petitioner, through counsel, waived a reading of the bill and tendered a plea of not guilty and not guilty by reason of insanity and requested a trial by jury. *Id*.

On May 5, 2015, the petitioner filed a Motion for Mental Examination after Plea of Insanity. Doc. 13, att. 3, pp. 32-35. On December 16, 2015, a hearing was held on the petitioner's motion and the trial court found the petitioner sane at the time of offense. Doc. 13, att. 3, p. 21. On May 4, 2016, the petitioner filed a Motion to Waive Trial by Jury. Doc. 13, att. 3, p. 64. On October 26, 2016, the petitioner filed a second motion to waive trial by jury. *Id*. at p. 78. On June 2, 2016, the petitioner filed a Motion for Mental Health Examination. Doc. 13, att. 3, p. 24. On October 12, 2016, the petitioner was found again found competent to proceed to trial. *Id*. at p. 26.

The petitioner's bench trial began on February 14, 2018. *Id*. at p. 34. The trial court rejected the petitioner's plea of not guilty by reason of insanity and found the petitioner guilty. *Id*. at p. 39. On March 26, 2018, the petitioner was sentenced to life imprisonment in the custody of the Louisiana Department of Corrections, to be served without benefit of probation, parole or suspension of sentence. *Id*. at p. 42.

**B. Direct Appeal**

Petitioner, through counsel, timely filed a direct appeal in the Louisiana Third Circuit Court of Appeal, raising the following assignments of error: 1) The imposition of the mandatory life

sentence without benefit of parole, probation, or suspension of sentence violates the Eighth Amendment of the U.S. Constitution and La.Const. art. 1, § 20, as it is nothing more than cruel and unusual punishment and, thus, excessive; and (2) defendant received assistance of counsel below that guaranteed by the Sixth Amendment during the sentencing phase, as counsel failed in three instances: (a) counsel failed to argue and present evidence to establish that defendant was "exceptional" and deserving of a downward departure from the mandatory life sentence at hard labor without benefit of parole, probation, or suspension of sentence due to the mitigating factors present in this case; (b) counsel failed to object to the excessiveness of the life sentence; and (c) counsel failed to file a motion to reconsider the sentence to preserve for appellate review the issue of whether defendant was exceptional and deserving of a downward departure from the statutorily mandated sentence.  275 So.3d at 29.  Finding his assignments of error to be interrelated, the court addressed them together and ultimately affirmed Kight's conviction. *Id*. at 34. The Louisiana Supreme Court denied the petitioner's application for supervisory review on October 8, 2019. *State v. Kight*, 2019-01226 (La. 10/8/19), 280 So. 3d 591.

### C.  State Collateral Review

On October 29, 2019[1], the petitioner filed a pro se application for post-conviction relief in the state district court, alleging that the trial court erred in finding that he knowingly and willingly waived his right to a jury trial and that trial counsel denied his right to testify on his own behalf. See doc. 13, att. 15, p. 107.  The trial court denied his application on December 2, 2020.  *Id*. at p. 6.  The Third Circuit denied his application for writ of review on October 19, 2021 (*id*. at pp. 152-153) and the Louisiana Supreme Court ultimately denied Kight's application for writs on February 8, 2022.  *State ex. rel Kight v. State*, 332 So.3d 627 (La. 2/8/22).

---

[1] Petitioner provide a dated copy of his Application for Post-Conviction Relief, nor is it contained in the state court record.  The Third Circuit writ grant identifies the PCR filing date as October 29, 2019. (Doc. 13, att. 15, p. 107).

### D. Federal Habeas Petition

The instant petition was filed in this court on February 22, 2022, on improper forms (doc. 1), and filed on this Court's proper forms on March 28, 2022 (doc. 5). On May 17, 2022, the undersigned ordered the State of Louisiana to file a response to petitioner's writ of habeas corpus (doc. 8), which it did on July 22, 2022 (doc. 13). The petition before this Court raises two issues: (1) the trial court erred in finding that petitioner knowingly and willingly waived his right to a jury trial; and (2) ineffective assistance of trial counsel.

## II.
## LAW & ANALYSIS

### A. Timeliness

Federal law imposes a one-year limitation period within which persons who are in custody pursuant to the judgment of a state court may seek habeas review in federal court. 28 U.S.C. § 2244(d)(1). This period generally runs from the date that the conviction becomes final. *Id.* The time during which a properly-filed application for post-conviction relief is pending in state court is not counted toward the one-year limit. *Id.* at § 2244(d)(2); *Ott v. Johnson*, 192 F.3d 510, 512 (5th Cir. 1999). However, any lapse of time before proper filing in state court *is* counted. *Flanagan v. Johnson*, 154 F.3d 196, 199 n. 1 (5th Cir. 1998).

A state application is considered pending both while it is in state court for review and also during intervals between a state court's disposition and the petitioner's timely filing for review at the next level of state consideration. *Melancon v. Kaylo*, 259 F.3d 401, 406 (5th Cir. 2001). The limitations period is not tolled, however, for the period between the completion of state review and the filing of the federal habeas application. *Rhines v. Weber*, 125 S.Ct. 1528 (2005). Accordingly, in order to determine whether a habeas petition is time-barred under the provisions of §2244(d) the court must ascertain: (1) the date upon which the judgment became final either by the

conclusion of direct review or by the expiration of time for seeking further direct review, (2) the dates during which properly filed petitions for post-conviction or other collateral review were pending in the state courts, and (3) the date upon which the petitioner filed his federal habeas corpus petition.

### B. Exhaustion and Procedural Default

Exhaustion and procedural default are both affirmative defenses that may be considered waived if not asserted in the respondent's responsive pleadings. *E.g.*, *Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994). However, the federal district court may also consider both doctrines on its own motion. *Magouirk v. Phillips*, 144 F.3d 348, 357–59 (5th Cir. 1998). Therefore we consider any assertions by respondent under these doctrines, in addition to conducting our own review.

#### 1. Exhaustion of State Court Remedies

The federal habeas corpus statute and decades of federal jurisprudence require that a petitioner seeking federal habeas corpus relief exhaust all available state court remedies before filing his federal petition. 28 U.S.C. § 2254(b)(1); *e.g.*, *Whitehead v. Johnson,* 157 F.3d 384, 387 (5th Cir. 1998). This is a matter of comity. *Ex parte Royall*, 6 S.Ct. 734, 740–41 (1886). In order to satisfy the exhaustion requirement, the petitioner must have "fairly presented" the substance of his federal constitutional claims to the state courts "in a procedurally proper manner according to the rules of the state courts." *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001); *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988). Each claim must be presented to the state's highest court, even when review by that court is discretionary. *Wilson v. Foti*, 832 F.2d 891, 893–94 (5th Cir. 1987). The exhaustion requirement is not satisfied if the petitioner presents new legal theories or entirely new factual claims in support of his federal habeas petition. *Brown v. Estelle*, 701 F.2d 494, 495 (5th Cir. 1983).

In Louisiana the highest court is the Louisiana Supreme Court. *See* LSA–Const. art. 5, § 5(a). Thus, in order for a Louisiana prisoner to have exhausted his state court remedies he must have fairly presented the substance of his federal constitutional claims to the Louisiana Supreme Court in a procedurally correct manner, based on the same general legal theories and factual allegations that he raises in his § 2254 petition.

### 2. Procedural Default

When a petitioner's claim is dismissed by the state court based on state law grounds, and those grounds are independent of the federal question and adequate to support the judgment, he may not raise that claim in a federal habeas proceeding absent a showing of cause and prejudice or that review is necessary "to correct a fundamental miscarriage of justice." *Coleman v. Thompson*, 111 S.Ct. 2546, 2553–54, 2564 (1991) (internal quotations omitted). Procedural default exists where (1) a state court clearly and expressly bases its dismissal of the petitioner's constitutional claim on a state procedural rule and that procedural rule provides an independent and adequate ground for the dismissal ("traditional" procedural default) or (2) the petitioner fails to properly exhaust all available state court remedies and the state court to which he would be required to petition would now find the claims procedurally barred ("technical" procedural default). In either instance, the petitioner is considered to have forfeited his federal habeas claims. *Bledsue v. Johnson*, 188 F.3d 250, 254–5 (5th Cir. 1999). This is not a jurisdictional matter, but instead a doctrine "grounded in concerns of comity and federalism." *Trest v. Cain*, 118 S.Ct. 478, 480 (1997). The grounds for traditional procedural default must be based on the actions of the last state court rendering a judgment. *Harris v. Reed*, 109 S.Ct. 1038, 1043 (1989). To serve as adequate grounds for a federally cognizable default, the state rule "must have

been firmly established and regularly followed by the time as of which it is to be applied." *Busby v. Dretke*, 359 F.3d 708, 718 (5th Cir. 2004) (internal quotations omitted).

### C. General Principles

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, 28 U.S.C. § 2254, governs habeas corpus relief. The AEDPA limits how a federal court may consider habeas claims. After the state courts have "adjudicated the merits" of an inmate's complaints, federal review "is limited to the record that was before the state court[.]" *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).

To overcome AEDPA's relitigation bar, a state prisoner must shoehorn his claim into one of its narrow exceptions. *Langley v. Prince*, 962 F.3d 145, 155 (5th Cir. 2019). As relevant here, he must show the state court's adjudication of the claim "resulted in a decision that was [1] contrary to, or [2] involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *Id.*; 28 U.S.C. § 2254(d)(1).

The first exception to the relitigation bar—the "contrary to" prong—is generally regarded as the narrower of the two. *Id.* A state-court decision is "contrary to" clearly established federal law only if it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if" it resolves "a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* (citing *Terry Williams v. Taylor*, 120 S.Ct. 1495, 1523 (2000).

The other exception to § 2254(d)(1)'s relitigation bar is the "unreasonable application" prong, which is almost equally unforgiving. *Id.* at 156. The Supreme Court has repeatedly held that it is not enough to show the state court was wrong. *Id.; see also, Renico v. Lett*, 130 S.Ct. 1855, 1862 (2010) ("[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly

established federal law erroneously or incorrectly." (quotation omitted)); *Schriro v. Landrigan*, 127 S.Ct. 1933, 1939 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."). Rather, the relitigation bar forecloses relief unless the prisoner can show the state court was so wrong that the error was "well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. (citing *Shoop v. Hill*, 139 S. Ct. 504, 506 (2019) (per curiam) (quotation omitted). In other words, the unreasonable-application exception asks whether it is "beyond the realm of possibility that a fairminded jurist could" agree with the state court. *Id*. (*citing Woods v. Etherton*, 136 S. Ct. 1149, 1152 (2016) (per curiam); *see also Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2558 (2018) (per curiam) (asking "whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court" (quotation omitted)).

Overcoming AEDPA's relitigation bar is necessary, but not sufficient, to win habeas relief. Even after overcoming the bar, the prisoner still must "show, on de novo review, that [he is] 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Id*. (*citing Salts v. Epps*, 676 F.3d 468, 480 (5th Cir. 2012) (quoting 28 U.S.C. § 2254(a)); *see also Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010) ("[A] habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on de novo review [under] § 2254(a).").

Section 2254(d)(2) speaks to factual determinations made by the state courts. Federal courts presume such determinations to be correct; however, a petitioner can rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## III.
### LEGAL ANALYSIS

#### A. Timeliness

The Louisiana Supreme Court denied Kight's application for supervisory review on direct appeal on October 8, 2019. His conviction became final on January 6, 2020, when his 90-day window for seeking review in the United States Supreme Court expired. Sup. Ct. R. 13. Accordingly, **0 days** accrued against § 2244(d)'s one-year limitations period before he filed his application for post-conviction relief in the trial court on October 29, 2019, prior to his conviction becoming final. The limitations period was then tolled until the Louisiana Supreme Court's decision on February 8, 2022, and **49 days** accrued against the one-year limit before Kight filed his federal habeas petition in this Court on March 28, 2022. Therefore only **49 days** have accrued against the one-year limit and the matter is timely.

#### B. Exhaustion and Procedural Default

Finding that the application was timely, we next apply the doctrines of exhaustion of state court remedies and procedural default to determine whether we can proceed to the merits of the claim.

Upon our review of the appellate record, we find that petitioner properly sought review on all issues at every level of the state court in his post-conviction proceedings.[2] He has therefore exhausted his state court remedies.

---

[2] The State argues that Petitioner's first claim, that the trial court erred in finding that he knowingly and intelligently waived his right to trial by jury, was exhausted only as to Louisiana state law and never addressed as to federal law and, therefore, is procedurally defaulted. Doc. 13, att. 1, p. 12. However, while his Application for Post-Conviction Review is not included in the records, in his Application for Supervisory Review in the Third Circuit he raises this claim and cites to the Sixth Amendment to the United States and to United States Supreme Court jurisprudence. Doc. 13, att. 15, p. 118. The Court finds that in this instance, Petitioner's claim that the trial court erred in finding that he knowingly and intelligently waived his right to trial by jury, has been analyzed and decided under federal law, such that it has been exhausted and may be presented under federal law to this Court.

In addressing the merits of the claim now raised in his federal habeas petition, the state court found no procedural defects and denied the claim on the merits. Therefore, we find no grounds for procedural default.

### C. Merits Consideration

    **1. Claim 1 – The trial court erred when it found Petitioner knowingly and intelligently waived his right to trial by jury.**

        *a. Standard*

The Sixth Amendment right of a defendant to a jury trial in a criminal case is a fundamental constitutional right. *Duncan v. Louisiana,* 88 S. Ct. 1444, 1452 (1968). A defendant may waive his right to a jury trial and instead be tried by the court. *Patton v. United States*, 50 S.Ct. 253, 258 (1930). A defendant can waive his right to a jury trial, if he does so voluntarily, knowingly, and intelligently, and whether or not the defendant has done so is based upon the unique circumstances of each case." *Adams v. U.S. ex rel. McCann*, 63 S. Ct. 236, 241 (1942). A criminal defendant's jury waiver, generally speaking, is deemed knowing and intelligent "when he understands that the choice confronting him is, on the one hand, to be judged by a group of people from the community, and on the other hand, to have his guilt or innocence determined by a judge." *Brydels v. Warden*, 2014 U.S. Dist. LEXIS 67276, at *8 (W.D. La. Mar. 7, 2014) (internal citations omitted). However, neither the Fifth Circuit nor the Supreme Court has defined any "fact-specific constitutional minima for a valid jury waiver," nor has either court "required a set colloquy before a jury waiver can be accepted." *Pitts v. Tanner*, 2015 U.S. Dist. LEXIS 176065, at *28 (W.D. La. Dec. 14, 2015) *citing Pierre v. Leger*, 495 F. App'x 403, 410-411 (5th Cir. 2012). "[T]he decision to proceed with a bench trial without the defendant's specific acquiescence runs afoul of the Constitution." *Office v. McCain,* 2018 U.S. Dist. LEXIS 203003, at 19 (W.D. La. Oct. 15, 2018) (internal citations omitted). "Courts [must] indulge every reasonable presumption against waiver of fundamental

constitutional rights." *Scott v. Cain,* 364 F. App'x 850, 853 (5th Cir. 2010) (internal citations omitted).

On habeas review, a state court's determination that a petitioner's jury trial waiver was valid is a mixed question of law and fact. *Pierre*, 495 F. App'x at 405. The state court's mixed findings of law and fact are entitled to deference, unless the state court's decision was contrary to or involved an unreasonable application of clearly established Supreme Court precedent. *Id.* "[T]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Duhon v. Hooper*, 2021 U.S. Dist. LEXIS 171607, at *16-17 (W.D. La. Aug. 23, 2021) *quoting Schriro v. Landrigan*, 127 S. Ct. 1933, 844 (2007).

### b. Claim

In this matter, Petitioner had two competency exams and a sanity commission. As discussed above, he was found competent both times, and sane at the time of offense. There has never been a determination that the petitioner's mental health precluded his ability to understand. Petitioner filed and signed two Motions to Waive Trial by Jury. Later, while represented by a different attorney, the petitioner was asked about his desire to waive his right to a jury trial in open court:

| | |
|---|---|
| COURT: | And Mr. White, again, the wishes of the defendant at this time are to waive the jury. That's his continued request at this time? |
| MR. WHITE: | It is, Your Honor. We endorse that request made by previous trial counsel. |
| COURT: | Okay. Can I visit with him just a minute? |
| MR. WHITE: | Certainly. |
| COURT: | Daniel, good morning. |

> DEFENDANT: Good morning, sir. How are you?
>
> COURT: Good, good.
>
> DEFENDANT: Happy Valentine's Day.
>
> COURT: Happy Valentine's Day. Give me your date of birth for the record, please, Daniel.
>
> DEFENDANT: December 1st, 1979.
>
> COURT: Okay. And you understand that we are proceeding to trial at this time. You have waived your right to a jury. Do you understand that?
>
> DEFENDANT: Yes, sir, that is correct.
>
> COURT: And that is still your wishes at this time?
>
> DEFENDANT: Yes, sir.
>
> COURT: All right, that's fine.

Doc. 13, att. 8, pp. 35-36.

Petitioner argues that his waiver was insufficient because there is no indication that either his defense attorney or the trial court "extensively discussed the right to a jury trial or that he understood his right and knowingly and intelligently waived it." Doc. 5, att. 1, p. 12. Addressing this claim on post-conviction review, the Third Circuit held that:

> However, contrary to Relator's assertion, the trial court is required only to determine whether Relator's waiver was made knowingly and intelligently, which does not require an in-depth discussion regarding jury trial procedure. *State v. Robinson*, 48,819 (La.App. 2 Cir. 2/26/14), 136 So.3d 302. In 2016, Relator and his counsel filed a signed "Motion to Waive Trial by Jury" that stated Relator fully understood his rights and knowingly waived them. At the beginning of trial, the trial court directly addressed Relator and asked if he understood that he had waived his right to a jury. Relator responded affirmatively. The trial court then asked if that was still Relator's wish at that time, to which Relator responded, "Yes sir." As in *Robinson*, the trial court here personally addressed Relator and confirmed that it was Relator's desire to be tried by the judge rather than a jury. Accordingly, the trial court did not err in finding Relator knowingly and intelligently waived his right to trial by jury.

Doc. 13, att. 15, pp. 152-53.

In this case, "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007). Applying this deferential standard of review under the AEDPA, Kight has not shown that the state court's determination rests on an objectively unreasonable determination of clearly established federal law. As such, he is not entitled to habeas corpus relief on this claim.

### 2. Claim 2 – Petitioner was denied his Constitutional right to testify by defense counsel.

#### a. Standard

It is well settled that a criminal defendant has the right to testify on his own behalf pursuant to the Fifth, Sixth and Fourteenth Amendments. *Rock v. Arkansas*, 107 S. Ct. 2704, 2707 (1987); *Bower v. Quarterman*, 497 F.3d 459, 473 (5th Cir. 2007); *Sayre v. Anderson*, 238 F.3d 631, 634 (5th Cir. 2001); *Jordan v. Hargett,* 34 F.3d 310, 312 (5th Cir. 1994). When, as here, the petitioner alleges that his counsel, not the court or the State, prevented him from testifying, the Fifth Circuit has held that the "'appropriate vehicle for such claims is a claim of ineffective assistance of counsel.'" *Sayre*, 238 F.3d at 634 (quoting *United States v. Brown*, 217 F.3d 247, 258-59 (5th Cir. 2000)).

A criminal defendant may waive his right to testify if that waiver is knowing, intelligent and voluntary. *Bower*, 497 F.3d at 473 (*citing Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997)). A violation of this right occurs only if the "'final decision that [the defendant] would not testify was made against his will.'" *Emery*, 139 F.3d at 198 (*quoting United States v. Teague*, 908 F.2d 752, 759 (11th Cir. 1990)).

A habeas petitioner has the burden of proving that he was denied this constitutional right. "[A] petitioner in a habeas proceeding cannot prevail on such a claim merely by stating to the habeas court that he told his trial attorney that he wished to testify and that his attorney forbade him from taking the witness stand." *Turcios v. Dretke*, No. H-97-0515, 2005 U.S. Dist. LEXIS 34938, 2005 WL 3263918, at *6 (S.D. Tex. Nov. 29, 2005) (*citing Underwood v. Clark*, 939 F.2d 473, 475-76 (7th Cir. 1991)); *accord Jones v. Cain,* No. 10-213, 2010 U.S. Dist. LEXIS 133831, 2010 WL 5375949, at *3 (E.D. La. Dec. 17, 2010) (Vance, J.); *Davis v. Quarterman*, No. H-06-3606, 2007 U.S. Dist. LEXIS 47271, 2007 WL 1886272, at *6 (S.D. Tex. June 29, 2007). The *Underwood* court specifically identified various problems that are bound to arise if habeas petitioners, making similar arguments, are not required to satisfy the required burden of proof. *Underwood*, 939 F.2d at 475-76. Adopting the reasoning in *Siciliano v. Vose*, 834 F.2d 29, 31 (1st Cir. 1987), the *Underwood* court recognized that such an assertion, even if made under oath, "is insufficient to require a hearing or other action on his claim that his right to testify in his own defense was denied him. It just is too facile a tactic to be allowed to succeed. Some greater particularity is necessary — and also we think some substantiation is necessary, such as an affidavit from the lawyer who allegedly forbade his client to testify — to give the claim sufficient credibility to warrant a further investment of judicial resources in determining the truth of the claim." *Underwood*, 939 F.2d at 475-76; *accord Gross v. Knight*, 560 F.3d 668, 672 (7th Cir.), *cert. denied*, 130 S. Ct. 402 (2009).

Citing *Underwood*, the Fifth Circuit has observed

> that allowing a bare assertion of a right-to-testify violation to precipitate the further investment of judicial resources is problematic. See [*Underwood*, 939 F.2d at 476] . . . (stating that a conclusory assertion by a defendant that his right to testify was denied him is insufficient to require a hearing because "[i]t just is too facile a tactic to be allowed to succeed"). We agree that there is "a grave practical difficulty in establishing a mechanism that will protect

> a criminal defendant's personal right . . . to testify in his own behalf without rendering the criminal process unworkable."

*United States v. Martinez*, 181 F.3d 627, 628 (5th Cir. 1999) (*quoting Underwood*, 939 F.2d at 475). "While the Fifth Circuit has adopted the general rule of law enunciated in *Underwood* …, the Court has further opined that [summary] dismissal is inappropriate unless the habeas petitioner has first been afforded the opportunity to amend his pleadings to provide the evidence necessary to support his claim." *Savoy v. Cain*, No. 06-1744, 2008 U.S. Dist. LEXIS 6475, 2008 WL 276542, at *1 (W.D. La. Jan. 29, 2008) (*citing Martinez,* 181 F.3d at 629); *but see, Silva-Garcia v. United States,* No. 10-cr-2224, 2012 U.S. Dist. LEXIS 160132, 2012 WL 5464639, at *4 (S.D. Tex. Nov. 8, 2012) (finding that the Fifth Circuit has not created a right to supplement a bare allegation of right-to-testify).

Of course, under current United States Supreme Court precedent, a federal habeas court is limited to consideration of the evidence and the record that were before the state courts that reviewed the merits of the claim at issue. *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011); *Blue v. Thaler*, 665 F.3d 647, 656 (5th Cir. 2011); *Gallow v. Cooper,* 505 F. App'x 285, 295-96 (5th Cir. 2012); *Thomas v. Thaler*, 520 Fed. Appx. 276, 2013 WL 1297269, at *4-5 (5th Cir. 2013).

### b. Claim

"Petitioner contends that he was denied his right to testify by defense counsel's decision alone." Doc. 5, att. 1, p. 13. However, while the record contains nothing to support contention, it does, in fact, contain a direct contradiction:

| | |
|---|---|
| MR. WHITE: | Your Honor, at this time I elect not to call my client, but I need to make a record as is customary in this type of case. |
| COURT: | Certainly. |
| WHITE: | So – |

| | |
|---|---|
| COURT: | If I may visit with him. |
| WHITE: | Yes, thanks. |
| COURT: | Daniel – |
| KIGHT: | Do I stand up? |
| COURT: | You stay where you are. Daniel, you understand I'm being told that Mr. White, that he thinks -- he would rather not call you as a witness. |
| KIGHT: | Yes, sir. |
| COURT: | You understand? |
| KIGHT: | Yes, sir. |
| COURT: | You understand that he can't tell you not to testify; you understand that? |
| KIGHT: | Yes, sir. |
| COURT: | What I'm telling you is that if you wish to testify, and you can -- now, let me make sure you understand this too, though. I urge you to heed the advice of your attorney, but he can't tell you not to testify; do we understand each other? |
| KIGHT: | Correct. |
| COURT: | Now, I'm asking you at this time, do you wish to testify? |
| KIGHT: | Well, I think since he went to school for it so he knows better than I do, so I'm not going to testify. |
| COURT: | That's fine, but again, you know that you can if you want to. |
| KIGHT: | Yes, sir. I understand that. |
| COURT: | That's fine. Good deal. |
| KIGHT: | Thank you. |
| COURT: | I'm satisfied that Mr. Kight, based on -- this Court recognizes that he has the right to testify should he |

|  |  |
|---|---|
|  | wish. He's taken advice of Counsel and electing not to take the stand; is that fair? |
| KIGHT: | Yes, sir. |

Doc. 13, att. 13, pp. 62-64.

The Third Circuit, in addressing this claim on post-conviction, held:

> However, in looking at the trial transcript, the trial court directly addressed Relator and explained to him that he had the right to testify and that his attorney could not prevent him from testifying. This exchange clearly shows that Relator was aware he had a right to testify and that his counsel could not prevent him from testifying, but Relator chose to rely on the advice of counsel and decided to waive his right. Relator knowingly and intelligently waived his right to testify by his own admission on the record. Furthermore, Relator has not shown how his counsel was ineffective, as counsel did not deny him his right to testify. Thus, Relator was not entitled to an evidentiary hearing on his claim.

Doc. 13, att. 15, p. 153.

Again, applying the deferential standard of review under the AEDPA, Kight has not shown that the state court's determination rests on an objectively unreasonable determination of clearly established federal law, and, as such, he is not entitled to habeas corpus relief on this claim.

## IV.
### CONCLUSION

Based on the foregoing, **IT IS RECOMMENDED** that the instant petition be **DENIED** and **DISMISSED WITH PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

In accordance with Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue. *See* 28 U.S.C. § 2253(c)(2). A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

THUS DONE AND SIGNED in Chambers this 21st day of September, 2022.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE